THE STATE, EX REL. THOMAS ET AL., APPELLEES, *v.* LUDEWIG,
COMMR. OF INSPECTIONS, APPELLANT.

(No. 1162—Decided October 22, 1962.)

*Mr. George H. Elliott* and *Mr. Clinton D. Boyd*, for appellees.

*Mr. Tilmon A. Ellison* and *Mr. William Rathman*, for appellant.

FESS, J.   This is an appeal on questions of law from a judgment of the Common Pleas Court of Butler County in an action in mandamus, in favor of relators, finding that the provisions of zoning ordinances of the city of Middletown, insofar as they purport to prohibit the erection of a gasoline and oil service station on the premises of relators, are arbitrary, un-

reasonable, and beyond the zoning power of such municipality, and that such prohibition has no tendency to promote the public health, safety, morals, convenience or general welfare and bears no reasonable relation thereto, and ordering respondent to issue to relators a building permit for the construction of such station in accordance with the application of relators previously made to respondent and refused.

The relators' property, which is the subject of this litigation, consists of a triangular lot with an improved dwelling thereon, located at the northeast corner of the intersection of Vannest Street and Manchester Road in the city of Middletown, Butler County, Ohio. Relators acquired this property in October of 1956 from one John Brooks who, in turn, had acquired the property in either 1939 or 1940. Brooks completed the house which he erected on the lot in 1947. At that time, the property was not within the city and was unzoned. The zoning ordinance in effect prior to the annexation provided that territory subsequently annexed to the city should be regarded residential, unless otherwise specified. Prior to October 1956, when relators acquired the property, the territory had been annexed to the city, and amendments to the zoning ordinances applicable thereto had been adopted. At the time of the adoption of the amendments to the zoning ordinance, after annexation, the parcels were zoned in accordance with the then existing uses—B-1 (neighborhood business) and R-1 (single-family residence). Since a dwelling was already erected on relators' property, it was logical that it be zoned residential.

At the time relators acquired title to this property there was, as now, situated on the same a single-family, residential frame house. East of this property on Manchaster Road, and north of Manchester Road, the area is zoned R-1 and is built up with residences similar to relators', some of which are less elaborate, but none more elaborate. North and east of relators' property on Vannest Street are similar houses, likewise in areas zoned R-1.

At the time Brooks purchased this lot, the neighborhood was substantially rural and the house he built upon the lot in question was the first new house completed after World War II. At that time the nearest commercial establishment was half a mile away. Thereafter, there was constructed a grocery store

and what is designated as a Pony Keg. Then, a drive-in ice cream place was built to the west; later, a super service station was built at the southeast corner of Ellen Drive and Manchester Road, across such road from relators' premises.

The lot in question comprises a triangle abutting on the northwest side of Vannest Street, which runs in a northwesterly direction from Manchester Road, and on the south side on Manchester Road, running east and west. Relators' triangular lot runs 316.55 feet along Vannest Street, and 225.18 feet along Manchester Drive. The base of the triangle on the west is 227.16 feet. Across Vannest Street from relators' lot, there is an irregular area zoned B-1, running 241.55 feet along Vannest Street, and 390.45 feet along Manchester Road. Northeast of this commercial area along Vannest Street eight 50-foot lots are zoned as R-1, single-family residence. Across Manchester Road from the commercial area are three lots, one lot abutting the intersection of Vannest Street and Manchester Road, and another 87-foot lot across Manchester Road opposite relators' property, all zoned residential. Relators' property is at the southeasterly tip of a larger triangular area consisting of 15 lots zoned residential. On the south of Manchester Road is a rectangular area running 471.80 feet east from Ellen Drive, and 200 feet deep, zoned B-1 neighborhood business. Ellen Drive dead-ends on Manchester Road along relators' property. Approximately 40 feet of this latter commercial area is across the street opposite relators' premises.

On August 7, 1957, the city adopted ordinance No. 3296 which, among other things, zoned relators' property as R-1 (single-family residence) along with all other areas in the vicinity, except for the area at the northwest corner of Vannest Street and Manchester Road, which was zoned as B-1 (neighborhood business). The area at the southeast corner of Manchester Road and Ellen Drive had been zoned as B-1 (neighborhood business) under the original zoning ordinance of the city, ordinance No. 3122.

The two filling stations, the electric transformer station, the supermarket and the ice cream stand, all mentioned above, are the only commercial structures in the vicinity. All other properties in the vicinity are improved with residences, except for a few scattered unimproved lots.

Since the plaintiffs purchased the property, an addition was built to the McGee Grocery of about 65-foot frontage on Vannest Avenue, and a Mobil Service Station has been erected directly opposite this property to the west. There was likewise erected a substation of the Cincinnati Gas and Electric Company.

Since relators have acquired this property, there has been substantial growth out Manchester Road. New subdivisions have been built up and traffic has increased to a very considerable extent on Manchester Road. The highway has been changed. Vannest Street also has considerable traffic.

Prior to its sale, Brooks had applied to have this property zoned for business but he sold the same to relators before any action was taken on his application.

After their purchase of the property, relators prosecuted Brooks' application for a change of zoning. The city commission initially voted four to one to zone the property B-1. Later, the commission reversed that decision and it was zoned R-1. This property is now being rented and occupied as a residence, for which relators receive $100 per month rent.

Relators purchased this property and paid the sum of $18,500 therefor with the intention of building a filling station thereon. They value the property at $15,000 for residence purposes.

Appraisers for the Middletown Realty Board have appraised the property for R-1 purposes at $16,500, and for B-1 purposes at $22,500. The appraisers assert that this real estate is desirable as a business corner and that it has suffered a certain depreciation as a residence in the commercial area. The opinion of one of the appraisers is to the effect that the neighborhood is predominately commercial.

The evidence offered by the respondent is to the effect that the property is worth $16,500 as a residence and is suitable for that purpose. Relators admit and the court found that the lot is suitable for residential use.

On November 12, 1958, the respondent, the Commissioner of Inspections for the city, charged with the responsibility of enforcing the provisions of the zoning ordinance, refused relators' application for a permit to erect a filling station on their property. Thereafter, without applying to the Board of Zoning

Appeals for a variance or other relief contemplated by the ordinance or taking an appeal to the Common Pleas Court pursuant to the provisions of Chapter 2506 of the Revised Code, relators filed the instant action for a writ of mandamus in the Common Pleas Court.

Appellant's third assignment of error is that the judgment of the Common Pleas Court is contrary to law in that it erred in holding that it was not necessary for the relators to exhaust the administrative remedy provided in the zoning ordinance before filing their action in mandamus. A majority of the members of this court, Judges Brown and Duffy, are of the opinion that a trial court does not abuse its discretion in allowing a writ of mandamus merely because the relator also has an adequate remedy in the ordinary course of the law, and conclude that the third assignment of error is not sustained, upon authority of *State, ex rel. Killeen Realty Co.,* v. *City of East Cleveland,* 169 Ohio St., 375; *State, ex rel. Wesselman,* v. *Board of Elections of Hamilton County,* 170 Ohio St., 30, 33; *State, ex rel. Grant, Exr.,* v. *Kiefaber et al., Montgomery County Planning Comm.,* 171 Ohio St., 326. The writer of this opinion disagrees for reasons stated in his dissenting opinion appended hereto.

Appellant also assigns as error:

1. The judgment of the trial court is contrary to law in that the court erred in holding that relators' property, though suitable for residential purposes for which it is zoned, is better suited for commercial purposes and, therefore, a permit for a gasoline filling station should be granted.

2. The evidence is not sufficient to sustain the judgment of the trial court.

In support of their respective contentions the parties approach their discussion from diametrically opposite aspects. Appellant asserts that to warrant the issuance of the writ of mandamus, the burden is on the relators to show the zoning ordinance to be clearly arbitrary and unreasonable and to have no substantial relation to the public health, safety, morals or general welfare, and that since the evidence discloses that the premises are "suitable" for residential purposes the ordinance as to relators' property cannot be held arbitrary, unreasonable and beyond the zoning power of the city. On the other hand, appellees contend that the respondent must show that the ordi-

nance and the restrictions therein imposed bear a reasonable relationship to the public health, safety, morals, convenience or general welfare. Appellees point out that in the opinion of the court and its judgment entry, the trial court found that the ordinance which prohibits a gasoline filling station on relators' property is arbitrary, unreasonable, beyond the zoning power, and that such prohibition has no tendency to promote the public health, safety, morals, convenience or general welfare.

As above indicated, at the time relators purchased the property the lot was zoned R-1, but an application for rezoning to B-1 was pending, and in expectation of the granting of such application relators purchased the property with the intention of erecting a filling station thereon and paid some $2,000 more for the lot in question as a result of such expectation. As a result of the erection of additional commercial buildings in a portion of the areas zoned B-1 adjacent to relators' lot on two sides thereof and the increased volume of vehicular traffic on Vannest Street and Manchester Road, relators' lot has become more suitable for commercial than residential use. But does this change in the surroundings of immediate area unconstitutionally deprive relators of the use of their property?

Zoning, even in its least innocuous and most unrestricted form, constitutes a limitation on the ownership of property, but somewhere far short of absolute dictation of land use by the sovereign a point is reached where control amounts to the taking of property without due process of law and without compensation. *State, ex rel. Killeen Realty Co.,* v. *City of East Cleveland, supra* (169 Ohio St., 375, 379). See, also, *Davis* v. *Miller,* 163 Ohio St., 91, 93.

*At some undefinable point, regulation of property shades into the taking of property,* which must be compensated, though it must be conceded that the instances in which the United States Supreme Court has determined that this point was exceeded are rare, and that there have been some examples of extreme legislative encroachments upon property which have gone uncompensated. Constitutional Law in Community Planning, 20 Law and Contemporary Problems, 199, quoted with approval and emphasis added by the Supreme Court in the *Killeen case, supra.*

Zoning necessarily involves a consideration of the community as a whole and a comprehensive view of its needs and no general zoning plan can be inaugurated without incurring complaints of hardship in particular instances. But the individual whose use of his property may be restricted is not the only person to be considered. The greater majority, whose enjoyment of their property rights requires the imposition of restrictions upon the uses to which private property may be put, must also be taken into consideration. The exclusion of places of business from residential districts is not a declaration that such places are nuisances or that they are to be suppressed as such, but it is a part of the general plan by which the city's territory is allotted to different uses in order to prevent, or at least to reduce, the congestion, disorder and dangers which often inhere in unregulated municipal development. And the question before a court is not whether it should approve the ordinance under review, but whether it can pronounce it an unreasonable exercise of power, having no rational relation to the public health, morals, safety or general welfare. *City of Aurora* v. *Burns*, 319 Ill., 84, 149 N. E., 784, quoted with approval in the *Killeen case.* Parenthetically, it may be observed that the effect of the granting of relief in the instant case upon relators' neighbors who have protested, as well as the general welfare of the residents of the city as a whole, are to be considered by the legislative authority, as well as the judiciary, in reviewing the constitutionality of the zoning provisions.

Thus, in *Pritz* v. *Messer*, 112 Ohio St., 628, it was held that a property owner, residing in a municipality in which a valid zoning ordinance was in full force and effect, had legal capacity to enjoin the erection of an apartment building upon a lot contiguous to her property, upon the ground that the proposed structure would violate the zoning ordinance. On the other hand, at the same term the court held in *City of Youngstown* v. *Kahn Bros. Building Co.*, 112 Ohio St., 654, that a provision in an ordinance establishing a small fraction only of the territory of a municipality into a district, and providing that no building intended to be used as a dwelling should be erected within the district except as a single or two family dwelling, in a case where the record showed that the district was in a most healthful part of the municipality in which to erect an apartment

house and that the public health, morals and safety of the district and of the entire municipality would not be injured by the erection of such an apartment house, constituted a taking of property without due process of law and a taking of private property for public use without compensation and invalid. The court distinguished its decision in *Pritz* v. *Messer* on the ground that the Youngstown ordinance was not a comprehensive zoning ordinance, but a so-called "block" ordinance. There was also evidence that, pursuant to a permit issued on the date of the passage of the ordinance, excavations and other work were made on the premises prior to the expiration of a 30-day limitation with respect to an exception provided in the ordinance.

In *State, ex rel. City Ice & Fuel Co.,* v. *Stegner, Dir.,* 120 Ohio St., 418, the court held that a provision of a zoning ordinance, limiting the subsequent addition, extension or substitution of business buildings or the use thereof, existing in a residence district at the time of the enactment of such ordinance, where it did not appear that such restrictions had no real or substantial relation to the public health, safety, morals or general welfare, was a valid exercise of the police power and was not violative of either the state or federal Constitutions. In that case, the relator sought a writ of mandamus to compel the issuance of a permit for the erection of an addition to relator's ice storage warehouse for the purpose of the manufacture of ice. Inferentially, the court holds that the burden of showing that the restrictions bear no real or substantial relation to the public health, etc., is imposed upon the relator.

*City of Akron* v. *Chapman,* 160 Ohio St., 382, involved an injunction to restrain continuance of a junkyard having the status of a nonconforming use prior to the adoption of the comprehensive zoning ordinance. The court held that a comprehensive zoning ordinance is a valid exercise of the police power, where such ordinance limits the future expansion of a lawful business conducted on property in a zoned area and which was in existence at the time of the passage of such zoning ordinance, or which ordinance limits the future addition, extension or substitution of buildings in which such business was being conducted at the time of the passage of such ordinance, and which ordinance has a substantial relationship to the public health, safety, morals or general welfare. But the court held also that

the provision of a comprehensive zoning ordinance is unconstitutional as taking property without due process of law and as being an unreasonable exercise of the police power, where it grants to the city council discretion to discontinue and remove a lawful nonconforming use of property in a zoned area, which use existed at the time of the passage of the zoning ordinance and continued thereafter without interruption and without material change, when in the council's opinion *such nonconforming use has been permitted to continue for a reasonable time.*

Contra the *Chapman case,* in *Smith* v. *Juillerat,* 161 Ohio St., 424, involving a license to strip-mine coal, the court held that where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property.

In *State, ex rel. Jack,* v. *Russell, Bldg. Commr.,* 162 Ohio St., 281, the relators asserted that, since it would be impossible for them and impracticable for the city to construct a public street next to their newly acquired lots, because of a ravine adjoining them, a refusal to allow them to construct a garage apartment upon such premises denied to them the protection of their property guaranteed by Sections 1, 16, and 19, Article I of the Ohio Constitution, and that section 8 of the zoning ordinance was confiscatory in that it practically prohibited the relators from the utilization of the rear area of their property. In rejecting relators' contention the court said:

"It is now firmly established that zoning ordinances which are not purely fanciful and esthetic but which are reasonable and comprehensive in their application and have reasonable relation to the public health, morals and safety do not violate either the sections of the Ohio Constitution, above referred to, or Section 1, Article XIV of the Amendments to the Constitution of the United States.

"* * *

"If the Steubenville ordinance has any relation to the public health, safety and morals of the community and is comprehensively applicable to the entire city, it is unquestionably a constitutional enactment,"

In the opinion the court comments at some length from the opinion in *Howland* v. *Acting Superintendent of Building*, 328 Mass., 155, 102 N. E. (2d), 423, involving a similar situation holding that although a landowner could have sold his property more advantageously if he could have divided it, the application of a zoning ordinance to his property under which his request for permission to subdivide was denied, was not unreasonable, arbitrary or oppressive.

In concluding its opinion the court states:

"Courts can not pass upon the wisdom of zoning ordinances. The only judicial function is to determine whether such an ordinance is reasonably comprehensive in its application and has a reasonable relation to the preservation of the public health, safety and morals, and, where the ordinance is so qualified, its enforcement does not constitute a taking of private property without compensation or the taking of property without due process of law, within the meaning of constitutional requirements.

"Since relators acquired the property, upon which they propose to construct a garage-apartment, after the passage of the zoning ordinance, and since that ordinance does have a relation to the public safety, we are constrained to hold that it is a valid and constitutional enactment."

See, also, *Davis* v. *Miller, supra* (163 Ohio St., 91), 97; *Curtiss* v. *City of Cleveland*, 166 Ohio St., 509, at 519; *State, ex rel. Killeen Realty Co.*, v. *City of East Cleveland, supra* (169 Ohio St., 375), at 384; *Schlagheck* v. *Winterfeld*, 108 Ohio App., 299, 309.

The case of *Curtiss* v. *City of Cleveland, supra*, dealt with rezoning and rejects the so-called "contract" or "reliance" theory applied by the Court of Appeals. It holds that actual or potential loss in value resulting from the rezoning of substantially improved lands does not of itself render an amendatory zoning ordinance invalid; and owners of such lands have no constitutional right to rely upon the provisions of an original comprehensive municipal zoning ordinance so as to permanently impair or prevent the adoption of a subsequent amendatory ordinance. However, if, when applied to the owners of such lands, such ordinance is found to be unreasonable and discriminatory and without relation to the public health, safety,

morals or general welfare, injunctive relief should be granted.

We have commented on the *Chapman, Juillerat, Russell* and *Curtiss cases* at some length because the opinion of the court in the *Killeen case* refers to such cases as holding that zoning restrictions which require one to use his land in accordance with the needs and nature of the community are held to be proper, but restrictions are held to be violative of the Constitution where they exceed the proper exercise of the police power.

"The power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and *the burden of establishing such arbitrariness is imposed upon him who asserts it.*" *Rodgers* v. *Village of Tarrytown* (1951), 302 N. Y., 115, 96 N. E. (2d), 731, quoted in *Curtiss* v. *City of Cleveland,* italics supplied.

We are, therefore, inclined to disagree to a certain extent with each of the contentions of the opposing parties.

1. At some undefinable point, regulation of property shades into the taking of property and the burden of establishing the taking of their property rests upon the relators.

2. It is well settled that the right to the relief sought by the relator in mandamus must be clear. 35 Ohio Jurisprudence (2d), 254, Section 13. The burden of establishing such a clear right is on the relator, 35 Ohio Jurisprudence (2d), 461, Mandamus, Section 170. And if there is a substantial doubt as to the relator's right, the writ will be refused. 35 Ohio Jurisprudence (2d), 254, Section 13.

3. It is established that where a denial of a permit is based on a ground which infringes the applicant's constitutional rights, mandamus may lie to compel the authority to grant it. 35 Ohio Jurisprudence (2d), 300, Section 48. But the presumption of validity which attaches to legislative acts in general applies with equal force to zoning ordinances, and the facts to justify interference by courts with the legislative function must clearly appear from the evidence. If the legislative classification for zoning purposes is fairly debatable, the legislative

judgment must be allowed to control. *Cleveland Trust Co. v. Village of Brooklyn,* 92 Ohio App., 351; *Curtiss* v. *City of Cleveland,* 166 Ohio St., 509, 170 Ohio St., 127; *State, ex rel. Grant, Exr.,* v. *Kiefaber et al., Montgomery County Planning Comm.,* 114 Ohio App., 279. The Supreme Court has recently held that an act of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear *beyond a reasonable doubt* that the act and constitutional guarantees are clearly incompatible. *State, ex rel. Dickman,* v. *Defenbacher, Dir.,* 164 Ohio St., 142. Whether the court would require such a high degree of proof with respect to the unconstitutionality of an ordinance as distinguished from an act of the General Assembly may be open to question, but nevertheless a clear incompatibility between an ordinance and the Constitution must exist before a court may declare such ordinance unconstitutional. *State, ex rel. Grant, Exr.,* v. *Kiefaber et al., Montgomery County Planning Comm., supra.* .The party asserting unconstitutionality must clearly show it, and if the question is debatable, the legislation must be upheld. *Benjamin* v. *City of Columbus,* 104 Ohio App., 293, affirmed, 167 Ohio St., 103; *Curtiss* v. *City of Cleveland, supra.*

In the instant case, after annexation of the area in question to the municipality, the several lots in the area were zoned in accordance with the then existing uses of the several lots and the vacant lots adjacent thereto. Inasmuch as a single-family residence then existed on relators' lot, it was reasonable that it be denominated residential at the time the ordinance was enacted. Since certain lots were then used commercially, it was incumbent upon the zoning authority to zone such lots commercial in recognition of their nonconforming use as such. Under such circumstances, it cannot be held that the ordinance, as a whole, was violative of constitutional rights in general or as applied to relators' property.

In the intervening years the area surrounding relators' property has substantially changed, so that today the lot is more suitable for commercial purposes than residential. But this development has not deprived relators of the use of their property, nor has it lessened the value thereof to the extent that it may be held that it has been taken without due process of law or without compensation.

At the time relators purchased their property, they were

fully aware of the fact that it was zoned residential but in expectation that the property would be rezoned commercial they, nevertheless, completed the purchase thereof and paid several thousand dollars more than it was then worth as residential property. See *Socony-Vacuum Oil Co., Inc.,* v. *Township of Mount Holly* (1947), 135 N. J. L., 112, 51 A. (2d), 19, in which the Supreme Court of New Jersey held that where the relator knew before exercising an option to purchase premises for use as a filling station that a proposed township ordinance would prohibit such use, and the ordinance was finally passed shortly after return day of a rule to show cause why mandamus directing issuance of a permit should not issue, the writ should be discharged.

It is true that in a situation where, by reason of a substantial increase in commercial development in the neighborhood, the use of a residential vacant lot is made a practical impossibility, relief should be accorded the property owner, but the application for relief should, in the first instance, be addressed to the legislative body. But so far as the courts are concerned, if the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control. *Cleveland Trust Co.* v. *Village of Brooklyn, supra* (92 Ohio App., 351). It cannot, therefore, be held in the instant case that the action of the municipal authority, in denying relators' application for amendment of the ordinance, is arbitrary, confiscatory and unreasonable. The court may not substitute its judgment for that of the legislative body.

Furthermore, diminution as distinguished from destruction of the value of a parcel of property previously zoned residential as a result of increased commercialization and increased vehicular traffic in its neighborhood affords a basis for seeking relief from the legislative authority by way of application for an amendment, but affords no basis for a declaration by a court that such changes result in the taking of such property without compensation or without due process of law.

In the light of the foregoing, appellant's assignment of errors numbered one and two are sustained.

*Judgment reversed and final judgment for respondent.*

DUFFY and BROWN, JJ., concur in the judgment of reversal.

Fess, J. (Dissenting from the conclusion of the majority that the existence of another remedy in the ordinary course of the law does not preclude the granting of a writ of mandamus.) As a general rule, where the granting of a permit is a ministerial duty involving the exercise of no judgment or discretion, mandamus will lie to compel the issuance thereof, if there is no other adequate remedy in the ordinary course of law. And where a denial of a permit is based on a ground which infringes the applicant's constitutional rights, mandamus may lie to compel the authorities to grant it. 35 Ohio Jurisprudence (2d), 362, Section 93.

But mandamus cannot be restorted to in a civil proceeding to subserve the purpose of an appeal, provided such review is adequate to the circumstances of the particular case. And where a party has had a remedy by appeal, whether he exercised that remedy or not, he cannot ordinarily have the extraordinary remedy of mandamus to secure the same rights which he could have secured by such appeal. 35 Ohio Jurisprudence (2d), 282, 284, Section 35. Section 2731.05, Revised Code, expressly provides that "the writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of law."

In the instant case, the relators attack the ordinance as a whole as well as the specific provisions of the ordinance as it affects their property.

In 1 Metzenbaum, Law of Zoning (2 Ed.), at page 708, the author makes a distinction between a court proceeding alleging that a zoning ordinance is unconstitutional *in its entirety* and a proceeding aimed merely against a *specific* provision or provisions of a zoning ordinance as they apply to the complainant's particular property and states that when a zoning ordinance is attacked in its *entirety* it is not necessary to have employed the available administrative remedies, but when it is attacked as to unconstitutionality or unreasonableness of a *specific* provision as it affects complainant's particular property, such complainant is required to employ the available administrative remedies before the court will entertain such action. Apparently the Supreme Court of Ohio makes no such distinction. In *State, ex rel. Lieux,* v. *Village of Westlake,* 154 Ohio St., 412 (approved and followed in *State, ex rel. Ronald, Inc.,* v. *City of Willough-*

*by*, 170 Ohio St., 39), the court holds that in Ohio "An applicant for a building permit, whose application is refused because of the provisions of a zoning ordinance, cannot secure a writ of mandamus, compelling the issuance of such permit on the grounds that the ordinance *as a whole* is unconstitutional, without first exhausting administrative remedies provided by such ordinance if such administrative remedies *might* enable such applicant to secure the permit." (Italics supplied.)

In *State, ex rel. Gund Co.,* v. *Village of Solon,* 171 Ohio St., 318, the Supreme Court sustained a demurrer to the petition seeking the issuance of a building permit for the erection of a gasoline filling station on the ground that Chapter 2506 of the Revised Code provides a remedy by judicial review of final orders of administrative boards of municipalities and thereby the relator had an adequate remedy at law by way of appeal to test the claimed invalidity of the zoning ordinance. See, also, *State, ex rel. Fredrix,* v. *Village of Beechwood,* 171 Ohio St., 343, also holding that relator had an adequate remedy at law by way of appeal pursuant to Chapter 2506, Revised Code (citing *State, ex rel. Lorain County Savings & Trust Co.,* v. *Board of Commrs. of Lorain County,* 171 Ohio St., 306; *State, ex rel. Gund Co.,* v. *Village of Solon, supra*; *State, ex rel. Grant, Exr.,* v. *Kiefaber et al., Montgomery County Planning Comm, supra*) and *State, ex rel. Cotleur,* v. *Board of Edn. of Cleveland Hts. School Dist.,* 171 Ohio St., 335, holding that relator had an adequate remedy by way of injunction citing *State, ex rel. Grant, Exr.,* v. *Kiefaber et al., Montgomery County Planning Comm., supra.* See, also, *State, ex rel. Ricketts,* v. *Balsly, Bldg. Inspr.,* 171 Ohio St., 553, holding that relator had an adequate remedy by way of injunction or by appealing from the decision of the county building inspector to the Board of Zoning Appeals (Section 303.15, Revised Code) and from such board to the Court of Common Pleas (Chapter 2506, Revised Code), which latter remedy he, in fact, had pursued, citing *State, ex rel. Grant, Exr.,* v. *Kiefaber et al., Montgomery County Planning Comm., supra*; *State, ex rel. Toledo-Maumee Raceways, Inc.,* v. *Ohio State Racing Commission,* 172 Ohio St., 109, holding that relator had an adequate remedy by way of appeal under Chapter 119, Revised Code; *State, ex rel. Coury,* v. *Ohio Bell Telephone Co.,* 172 Ohio St., 309, holding that relator had an adequate remedy by way

of appeal to Public Utilities Commission and an appeal from an adverse order of the commission.

Notwithstanding the foregoing decisions holding that mandamus may not subserve the remedy of appeal, the Supreme Court has recognized that it has power to allow a writ of mandamus even though the relator has or had an adequate remedy in the ordinary course of law, and has also held that a Court of Appeals that allows a writ of mandamus to a relator does not thereby abuse its discretion merely because such relator also has an adequate remedy at law. *State, ex rel. Wesselman. v. Board of Elections of Hamilton County,* 170 Ohio St., 30, 33. In *State, ex rel. Grant, Exr., v. Kiefaber et al., Montgomery County Planning Comm., supra,* the court states further that the Court of Appeals has the same discretionary power with respect to the allowance of a writ of mandamus in such a case originating in that court as does the Supreme Court and that where a Court of Appeals, in the exercise of its discretion, allows a writ of mandamus to a relator who has or had an adequate remedy in the ordinary course of law, the Supreme Court has been reluctant to and has declined to interfere with such exercise of discretion by the Court of Appeals, citing the *Wesselman case* and *State, ex rel. Killeen Realty Co., v. City of East Cleveland,* 169 Ohio St., 375.

This dissenting member agrees with the majority that the same principles are to be applied to review by the Court of Appeals of a judgment of the Common Pleas Court allowing a writ of mandamus in the exercise of its discretion notwithstanding the relator has or had an adequate remedy in the ordinary course of the law. However, it is somewhat difficult to reconcile the decisions in the *Kiefaber, Wesselman* and *Killeen cases* with previous decisions holding that a petition in mandamus fails to state a cause of action where there is available an adequate remedy at law.

Upon the instant appeal, there is no evidence to support the statement in the opinion of the trial court that prior appeal by the relators would have been futile.

In the *Killeen case,* the Supreme Court holds as follows:

"2. Where the doing of an act which is a prerequisite to the performance of an assigned function of a municipal authority would be onerous and expensive and the doing of which act

would be a vain thing, and where the failure to do such act is not the ground for refusal by the municipal authority to perform its assigned function, failure to do that act will not constitute a bar to an action in mandamus to compel the performance of such function upon the subsequent doing of such act.

"3. Where a municipality's zoning ordinances authorize the granting of a variance in hardship cases, where it is shown that a proposed use of the land in question is in harmony with the needs and nature of the community, and where no economically feasible use of such land may be made under the existing zone designation, it is an abuse of discretion on the part of the municipality's officials possessing the discretionary power to do so to refuse to grant a variance.

"4. Where an isolated parcel of land is similarly zoned as are parcels with which it is contiguous on one side but it extends into and is surrounded on the three other sides by an area of land zoned for less restricted uses, where no feasible economic use of the former land can be made under the present zoning, and where a reduction to the next less restricted use is in harmony with the needs and nature of the neighborhood, the refusal by municipal authorities to extend the less restricted use to such property constitutes a taking of it without due process, resulting in its confiscation."

In the *Killeen case*, the relators, after extensive negotiations and discussion with the respondents, made formal application for rezoning which was denied and therefore had presumably exhausted their only adequate remedy in the ordinary course of law. Respondents contended that the relators "could and should" have brought an action for declaratory judgment to obtain a determination of the validity of the zoning of their property. Without passing upon the propriety of the suggested declaratory judgment action, the Supreme Court found that the jurisdictional prerequisites to a mandamus suit in the Court of Appeals existed, citing numerous authorities. In determining whether there had been such an exhaustion of administrative remedies as to make mandamus available as an avenue for relief, the Supreme Court pointed out that the Court of Appeals found the record to be "abundantly clear" that to have made a formal filing of complete plans and specifications would have been "to perform a useless act." The Supreme Court referred

also to the fact that it was obvious from the record that the preparation of such plans and specifications would have been an onerous and expensive undertaking, and that the refusal of the respondents to grant the permit in question was never bottomed upon the absence of such plans and specifications. The court, therefore, concluded upon the facts thus presented that where the doing of an act which is a prerequisite to the performance of an assigned function of a municipal authority would be onerous and expensive, where it is *clear* that the doing of the act would be a vain thing, and where the failure to do such act is not the ground for refusal by the municipal authority to perform its assigned function, failure to do that act will not, as a matter of law, constitute a bar to an action in mandamus to compel performance of such function. The *Killeen case* is also to be distinguished upon the facts. In the *Killeen case,* the parcel was isolated and entirely surrounded on three sides by an area zoned for less restricted uses. In the instant case, the parcel is surrounded on two sides by commercially and residentially zoned lots.

No such circumstances appear from the record in the instant appeal to afford a predicate to the conclusion of the Common Pleas Court that an appeal to the Board of Zoning Appeals would have been futile. Cf. *State, ex rel. McMillan,* v. *Dickerson et al., Industrial Comm.,* 172 Ohio St., 288. Even though the trial court might assume that the decision on appeal to the Board of Zoning Appeals would be adverse, nevertheless, under Chapter 2506 of the Revised Code, an appeal from such decision to the Common Pleas Court was available. Furthermore, if the administrative remedy *might* enable the relators to secure the permit, mandamus should be refused. *State, ex rel. Lieux,* v. *Village of Westlake, supra.* Upon such an appeal, the validity of the limitations imposed by the provisions of the ordinance relating to variances, as well as the constitutionality of the ordinance in its application to relators' property, could be attacked.

Before the writ may issue, it must appear affirmatively that there is no plain and adequate remedy in the ordinary course of the law. *State, ex rel. Libbey-Owens-Ford Glass Co.,* v. *Industrial Commission,* 162 Ohio St., 302; *State, ex rel. Lorain*

*County Savings & Trust Co.,* v. *Board of Commrs. of Lorain County, supra* (171 Ohio St., 306).

In *State, ex rel. Wesselman,* v. *Board of Elections of Hamilton County, supra* (170 Ohio St., 30), respondents contended that the relator had an adequate remedy by way of injunction or declaratory judgment to secure the relief sought by way of mandamus and the court held that a Court of Appeals that allows a writ of mandamus does not thereby abuse its discretion merely because the relator also has an adequate remedy in the ordinary course of law. In its opinion, the court cites page 478 (dissenting opinion) in *State, ex rel. Selected Properties, Inc.,* v. *Gottfried,* 163 Ohio St., 469. The *Gottfried case,* an original action in the Supreme Court in which three members of the court concurred in the opinion of the Chief Justice (not carried into the syllabus), held that injunction would not serve the purpose of the provisions of Section 2731.01, Revised Code, under the facts presented in such action since "injunction is ordinarily employed to prevent future injury, while the purpose of mandamus is to redress past grievances." Two members of the court concurred in paragraphs one and three of the syllabus but dissented from paragraph two of the syllabus and the judgment. Taft, J., dissented on the ground that the case clearly represented an instance where the Supreme Court, in the exercise of its discretion, should refuse to allow mandamus.

The Supreme Court has traditionally held that there can be no remedy by mandamus if injunction will afford adequate relief. 35 Ohio Jurisprudence (2d), 278, Section 31. *State, ex rel. Schafer,* v. *Citizens National Bank of Ironton,* 168 Ohio St., 535; *State, ex rel. Lorain County Savings & Trust Co.,* v. *Board of County Commrs. of Lorain County, supra* (171 Ohio St., 306); *State, ex rel. Cotleur,* v. *Board of Edn. of Cleveland Hts. School Dist.,* 171 Ohio St., 335; *State, ex rel. Ricketts,* v. *Balsly, Bldg. Inspr., supra* (171 Ohio St., 553). The cases reported in volumes 170 and 171 of Ohio State Reports are subsequent to the *Gottfried case,* and to the extent that the language in the last paragraph of the opinion conflicts with the later decisions is to be regarded as overruled.

This dissenting member of the court therefore believes, from an analysis of the *Killeen, Wesselman* and *Grant cases,*

that there was no intention on the part of the Supreme Court to modify the settled principle that mandamus is not available to subserve the purpose of an appeal absent a showing that an appeal is not an adequate remedy under the circumstances of the particular case. It is also to be noted that the *Wesselman* and *Killeen cases* relate to injunction or declaratory judgment as an adequate remedy in the ordinary course of the law and did not deal with the availability of appeal as an adequate alternative remedy.

The writer, therefore, concludes that in the instant case, wherein it is apparent that the relators have or had an adequate remedy in the ordinary course of the law by way of an appeal, the Common Pleas Court erred in granting the extraordinary writ of mandamus; that the judgment should also be reversed on that ground and final judgment entered for the respondent herein.

FESS, J., of the Sixth Appellate District, BROWN, J., of the Seventh Appellate District, and DUFFY, J., of the Tenth Appellate District, sitting by designation in the First Appellate District.