## Glorioso Appeal.

Argued October 4, 1963. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

Leonard M. Mendelson, with him Donald E. Ziegler, for appellants.

Charles D. Coll, with him A. Sanford Levy and Herbert G. Sheinberg, for appellees.

OPINION BY MR. JUSTICE JONES, January 8, 1964:

In the spring of 1957, the United States Government offered for public sale an unimproved tract of land located at the northwest corner of Allegheny River Boulevard (Boulevard) and Center Avenue in the Borough of Verona (Borough). This tract, rectangularly shaped, fronted 159 feet on the Boulevard and 103.5 feet on Center Avenue and contained 16,640 square feet.

To the north of the property lies real estate owned and used by the Pennsylvania Railroad Company for railroad purposes; to the west is property owned by Sam Weinstein et al. (Intervenors) on which is erected a supermarket operated by the Great Atlantic and Pacific Tea Company (A. & P.); to the south across Center Avenue and to the east across the Boulevard, the United States' land faces an uninterrupted line of commercial establishments the upper floors of many of which are used for residential purposes. Both the Boulevard and Center Avenue carry so much traffic that, prior to the offer for sale of the United States' land, the Borough Council had discussed the feasibility of acquiring some of the A. & P. property or some of the Railroad property for use as a municipal parking lot. Later, on learning that the United States might sell its property, Council determined to bid therefor if and when it should be placed on the market.

Accordingly, when the United States offered the land for sale the Borough submitted a bid. That bid and all other bids submitted at that time were rejected as being too low and the land was re-offered for sale. Bids were again submitted by the Borough, by Carmelo and Teresa Glorioso (Glorioso) and by the Intervenors. On May 31, 1957, Glorioso's bid was accepted.

Thereafter, on June 11, 1957, a zoning ordinance was adopted by the Borough which divided Verona into six zoning districts, namely, Heavy Manufacturing and Industrial, Light Manufacturing and Industrial, Commercial, Public and Private Recreational, Residential and Special.

Only three properties were included within the "Special" district: the Glorioso property, the Railroad property and the A. & P. property. The "Special" district encompasses approximately 4 1/2 acres or 1.3% of the total Borough area of 338 acres and within such district only nine land uses are permitted: (1) cultivation, (2) government use, (3) hospital, (4) medical center, (5) municipal building, (6) parking, (7) public utility structure, (8) railroad use and (9) nonprofit recreation areas. Use as a gasoline service station was specifically prohibited in the "Special" district and the ordinance further provided that, on an appeal to the Board of Adjustment, "no use different from that permitted in the Zoning District shall be permitted." Glorioso appeared at the Borough Council meeting at which the ordinance was adopted and notified Council that his bid had been accepted by the United States.

Four years after the purchase of the land, Glorioso applied to the Borough for a variance to permit the construction of a gasoline station. The Board of Adjustment decided that it was without authority under the ordinance to grant any variance. Appeal was taken to the County Court of Allegheny County which, after taking extensive testimony, dismissed the appeal. Hence, this appeal.

Throughout the proceedings Glorioso has strongly impugned the motives of the Borough officials. Our reading of the record does not bear out Glorioso's imputations but, on the contrary, indicates that the Borough officials were actuated solely by the best interests of the Borough. Furthermore, it seems clear that the ordinance was not directed at the Glorioso property nor enacted to favor existing gasoline stations; on the contrary, it was a very belated attempt to remedy the neglect of former officials in not providing for the orderly development of the Borough.

Nevertheless, the highest motives and the exercise of legislative wisdom are not sufficient to preserve an ordinance from the prohibition of the constitutional mandate that property shall not be taken for public use without just compensation. For their validity zoning ordinances depend upon a reasonable relationship to the police power asserted for the public welfare: *Village of Euclid, v. Ambler Realty Co.,* 272 U.S. 365, 387, 47 S. Ct. 114, 118; *Sawdey Liquor License Case,* 369 Pa. 19, 25, 85 A. 2d 28. While all zoning necessarily involves a limitation of the use to which property may be put *(Dunlap Appeal,* 370 Pa. 31, 34, 87 A. 2d 299) and, while to some extent property may be regulated under the police power, there comes a point where regulation of property may, in reality, constitute a taking of the property (*Penna. Coal Co. v. Mahon,* 260 U.S. 393, 415, 416, 43 S. Ct. 158, 160).[1]

" 'By its very nature zoning impinges upon the right of a land owner to use his land in any way that he desires so long as he does not unduly interfere with his neighbor's right to use and enjoy his land' ": *Swade v.*

---

[1] See: *City of Youngstown v. Kahn Bros. Building Co.,* 112 Ohio St. 654, 148 N.E. 842, 43 A.L.R. 662; *State v. Ludewig,* 116 Ohio App. 329, 187 N.E. 2d 170, 176.

*Springfield Township Zoning Bd. of Adjustment*, 392 Pa. 269, 271, 140 A. 2d 597; *Village of Euclid v. Ambler Realty Co.*, supra, 272 U.S. at 387. "Zoning is the legislative division of a community into areas in each of which only certain designated uses of land are permitted so that the community may develop in an orderly manner in accordance with a comprehensive plan": *Best v. Zoning Bd. of Adjustment*, 393 Pa. 106, 110, 141 A. 2d 606; *French v. Zoning Bd. of Adjustment*, 408 Pa. 479, 481, 184 A. 2d 791. The test of constitutionality of a zoning ordinance is whether it bears a substantial relation to the health, safety, morals or general welfare of the public: *Nectow v. Cambridge*, 277 U.S. 183, 188, 48 S. Ct. 447, 448. One who challenges the constitutionality of a zoning ordinance has no light burden and it is settled that before a zoning ordinance can be declared unconstitutional it must at least be shown that its provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. If the validity of the legislative judgment is fairly debatable, the legislative judgment must be allowed to control: *Village of Euclid v. Ambler Realty Co.*, supra; *Best v. Zoning Bd. of Adjustment*, supra, 113; *Gratton v. Conte*, 364 Pa. 578, 73 A. 2d 381.

We are of the opinion that the instant ordinance insofar as it creates the "Special" district is invalid. The legislative judgment is never sacrosanct, and certainly not fairly debatable, when the legislative body ignores reality. The purpose of a zoning ordinance is to regulate development of land use; the creation of the "Special" district in the case at bar enacts a redevelopment. In *French v. Zoning Bd. of Adjustment*, 408 Pa. 479, 184 A. 2d 791, we held that where, in the midst of an area zoned residential and devoted in fact to residential uses, six pieces of property then being used for commercial purposes were zoned commercial, the zon-

ing of such properties as distinct commercial districts was without legal justification and constituted illegal spot zoning. In the case at bar, the "Special" district was carved out of an area devoted to commercial uses; it was bounded by two busy, traffic-congested streets to the front and by railroad tracks to the rear; it contained but three properties, the two larger of which were already devoted to commercial uses; and it restricted the uses to which such properties could henceforth be devoted to a point where the permitted uses, if not actually illusory, were at least such as to make the properties affected considerably less usable than they would have been had they been developed immediately prior to the enactment of the ordinance in a manner consistent with the nature and uses of the immediately adjacent properties. The only distinction between the zoning in the instant case and in *French* is that the spot zoning in *French* tended to increase the value of the area given exceptional treatment whereas here the special treatment tended to diminish value.

In *Putney v. Abington Township,* 176 Pa. Superior Ct. 463, 474, 108 A. 134, the Court defined "spot zoning": " 'A singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment is invalid "spot" zoning.' " See also: *Taylor v. Haverford Township,* 299 Pa. 402, 149 A. 639; *Huebner v. Phila. Saving Fund Society,* 127 Pa. Superior Ct. 28, 192 A. 139.

In the case at bar, although the question was properly raised, the court below failed to consider whether the creation by this ordinance of this "Special" district constituted illegal spot zoning. In theory, the creation of this district affected only a minute area of the borough; in actuality, the impact of this "Special" district provision falls upon only one out of the three properties

200

located in that minute area since the A. & P.'s use of its properties constitutes a nonconforming use and the Railroad's use of its property is a permitted use under the ordinance. By the creation of this "Special" district in this small area of land, completely surrounded by districts zoned commercial and industrial, the Borough has singled out and created a small "island" of severely restricted uses, despite the absence of any differentiating relevant facts between the "island" and the surrounding districts. The classification of this land as a "Special" district is an unreasonable and arbitrary exercise of the Borough's police power and constitutes illegal spot zoning. Such spot zoning cannot be justified and the "Special" district created by this ordinance cannot be permitted to stand.

In view of the conclusions reached, it is unnecessary to consider other contentions made on behalf of Glorioso. Suffice it to say that our examination of the instant record indicates that the classification of this area as a "Special" district is without any substantial relation to the health, safety, morals or general welfare of the public.

Order reversed.