Children's Home of Easton, Appellant *v.* City of Easton, Appellee.

Argued April 10, 1980, before Judges WILKINSON, JR. MENCER and MACPHAIL, sitting as a panel of three.

*Joseph M. Reibman, Reibman and Reibman,* for appellants.

*Herbert V. Giobbi,* with him *Robert A. Freedberg,* Assistant City Solicitor, for appellee.

OPINION BY JUDGE MACPHAIL, July 24, 1980:

Children's Home of Easton (Appellant) filed a petition for declaratory judgment before the Court of Common Pleas of Northampton County seeking a determination of the constitutionality of Section 1301.67 of the Codified Ordinances of the City of Easton (1965).

Appellant proposed to operate a foster home consisting of three foster children, the foster parents, and their two natural children in an area of the City of Easton (Easton) zoned Residential-Medium Density. On the basis of an opinion from its solicitor, Easton rejected the proposal because the use of the premises would violate Easton's definition of "family" in the ordinance.[1] Thereupon, Appellant filed its petition for declaratory judgment challenging the constitutional validity of the restrictive definition of "family" contained in Section 1301.67 as violative of the Due Process and Equal Protection Clauses of the United States and Pennsylvania Constitutions. Easton filed an answer to the petition following which a hearing was held. Upon receipt of briefs from counsel, the trial court declared the ordinance constitutional holding that the decision of the United States Supreme Court

---

[1]    (a)  A single person occupying a dwelling unit and maintaining a household, including not more than one roomer or lodger; or

(b)  Two or more persons related by blood or marriage, occupying a dwelling unit, living together and maintaining a common household, including no more than one roomer or lodger; or

(c)  *Not more than three unrelated persons occupying a dwelling unit, living together and maintaining a common household.*

A common household shall be deemed to exist if all members thereof have access to all parts of the dwelling unit. (Emphasis added.)

in *Village of Belle Terre v. Boraas,* 416 U.S. 1 (1974) was controlling.

In his opinion in support of his order, the learned trial judge noted that while some other states have held similar ordinances unconstitutional by distinguishing *Belle Terre* on its facts or by applying their own state constitutions,[2] Pennsylvania has not done so. Understandably, the trial court, confronted with two ordinances almost identical in their terms[3] and a decision of our nation's highest court upholding the constitutionality of one of them, declined to follow the decisions of the other jurisdictions.

The trial court was also cognizant of a later United States Supreme Court case, *Moore v. City of East Cleveland, Ohio,* 431 U.S. 494 (1977), which held as unconstitutional a zoning ordinance which too restrictively defined a "family" of related persons.[4] The trial

---

[2] *Hessling v. City of Broomfield,* 193 Colo. 124, 563 P.2d 12 (1977); *City of Des Plaines v. Trottner,* 34 Ill.2d 432, 216 N.E.2d 116 (1966); *State v. Baker,* 81 N.J. 99, 405 A.2d 368 (1979); *Holy Name Hospital v. Montroy,* 153 N.J. Super. 181, 379 A.2d 299 (1977); *Group House of Port Washington, Inc. v. Board of Zoning and Appeals of the Town of North Hempstead,* 45 N.Y.2d 266, 380 N.E.2d 207, 408 N.Y.S.2d 377 (1978); *City of White Plains v. Ferraioli,* 34 N.Y.2d 300, 313 N.E.2d 756, 357 N.Y.S.2d 449 (1974).

[3] In *Belle Terre* "family" was defined as "[o]ne or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. *A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage shall be deemed to constitute a family.*" (Emphasis ours.)

[4] "Family" was defined in the ordinance under consideration in *Moore* in pertinent part as

   (b)   Unmarried children of the nominal head of the household or of the spouse of the nominal head of the household, provided, however, that such unmarried children have no children residing with them.

   ....

court observed that the Supreme Court in *Moore* distinguished its opinion in *Belle Terre* by pointing out that Belle Terre's ordinance affected only *unrelated* individuals whereas the City of East Cleveland's ordinance regulated the occupation of housing by slicing deeply into the family itself.

Finally, the trial court here observed that in Lehigh County the Court of Common Pleas upheld the denial of a conversion of a premises by a zoning hearing board where the applicants were unrelated and the municipality's ordinance had limited conversions to "family units."[5] The ordinance in question there defined "family" as "a collective body of two or more persons doing their own cooking and living together as a separate housekeeping unit in relationship based upon birth, marriage, adoption or other domestic bond." Pointing to *Belle Terre*, that trial court held that such a definition of "family" was not unconstitutionally restrictive.

Appellants here would distinguish *Belle Terre* or, in the alternative, argue that the decision in *Belle Terre* lends support to its position that a foster family cannot be excluded as a permissible use under the instant ordinance.

In the brief uncontradicted testimony presented to the trial court, the foster family proposed was described in all respects as akin to a "natural" family. There would be no professional counselors involved,

(d)  Notwithstanding the provisions of subsection (b) hereof, a family may include not more than one dependent married or unmarried child of the nominal head of the household or of the spouse of the nominal head of the household and the spouse and dependent children of such dependent child....

[5] *Humphrey v. Zoning Board*, 71 Pa. D. & C.2d 587 (1975).

nor any "days off" for the foster parents.[6] The "hope" would be that the foster children would remain in the home until graduation from high school. The foster parents would be expected to provide all the services that would have been expected from natural parents. They would serve in a "nurturing, supervisory and caring role." In sum, the foster family in this instance would be the functional equivalent of a biologically related family.

Contrary to the factual situation presented to the United States Supreme Court in *Belle Terre,* where six unrelated college students chose to live together for a temporary period of time as a matter of convenience, here we are concerned with a functional family unit which would promote the very values the United States Supreme Court held in *Belle Terre* to be worthy of preservation:

> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to *family needs....* The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample lay out zones where *family values,* youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people. (Emphasis added.)

*Village of Belle Terre v. Boraas, supra* at 9.

Recently, our own Court had occasion to consider whether a use certificate should be granted for a dwelling in Philadelphia to be used as a residence for

---

[6] *Cf. Wengert v. Zoning Hearing Board of Upper Merion Township,* 51 Pa. Commonwealth Ct. 79, 82, 414 A.2d 148, 149 (1980) (where we held that when professional counselors and relief parents, inter alia, are employed, the home is differentiated from "a normal foster home where a family accepts juveniles into a family surrounding as a substitute family home").

a family with six foster children. *Children's Aid Society v. Zoning Board of Adjustment*, 44 Pa. Commonwealth Ct. 123, 402 A.2d 1162 (1979). In the Philadelphia ordinance, "family" was defined as a "person living independently; or a group of persons living as a single household unit using housekeeping facilities in common, but not to include more than *three persons unrelated* by blood, marriage, or adoption." (Emphasis added.) *Id.* at 124, 402 A.2d at 1163. We noted that the proposed use would have no greater effect upon the public health, safety, and welfare and other conditions identified in the zoning ordinance than that which would occur if a family with six natural or adopted children occupied the premises. We affirmed the grant of the certificate.

Our Supreme Court has held in *Glorioso Appeal,* 413 Pa. 194, 198, 196 A.2d 668, 671 (1964), that

> One who challenges the constitutionality of a zoning ordinance has no light burden and it is settled that before a zoning ordinance can be declared unconstitutional it must at least be shown that its provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. If the validity of the legislative judgment is fairly debatable, the legislative judgment must be allowed to control:.... (Citations omitted.)

Here, the only state interest asserted in the ordinance to be attained by the provision now in dispute is population density control. While such a purpose has been recognized as a legitimate state interest in zoning matters, *Campbell v. Ughes*, 7 Pa. Commonwealth Ct. 98, 298 A.2d 690 (1972), mere logic demonstrates that whether there are three children in a foster home or three children in a home related by blood or adoption to their parents the numerical result is the same. *See*

*Children's Aid Society v. Zoning Board of Adjustment, supra.* On this issue there can be no "fair debate." Nowhere in the record of this case is there any evidence whatever that there is *any* relationship much less a *substantial* relationship between foster homes and the public health, safety, morals or general welfare of other persons residing in the same residential district. Since no other legitimate state interest has been asserted, we conclude that the regulation is clearly arbitrary and unreasonable.

To summarize, while the decision in *Belle Terre* on its face would appear to control the matter now before us, we are of the opinion that the factual differences between a foster family as described in the record of this case and six unrelated college students residing temporarily in a residential dwelling are so vast that a different result is compelled. Furthermore, while judgment will be entered in favor of the plaintiff (Appellant, here) in this declaratory judgment proceeding, it must be observed that we have held that the disputed provision is unconstitutional as to that litigant only.

## ORDER

AND NOW, this 24th day of July, 1980, the decree of the Court of Common Pleas of Northampton County, dated April 16, 1979, is set aside and the case is remanded for the entry of judgment in favor of Children's Home of Easton.

Judge WILKINSON, JR. dissents on the opinion of Judge ALFRED T. WILLIAMS, JR., President Judge of the Court of Common Pleas of Northampton County.