The Philadelphia Center for Developmental Services, Inc. *v.* The Zoning Hearing Board of Plymouth Township. Plymouth Township, Appellant.

The Philadelphia Center for Developmental Services, Inc. *v.* The Zoning Hearing Board of Plymouth Township. Plymouth Township, Appellant.

The Philadelphia Center for Developmental Services, Inc. *v.* The Zoning Hearing Board of Plymouth Township. Plymouth Township, Appellant.

Argued April 9, 1985, before Judges CRAIG and COLINS and Senior Judge KALISH, sitting as a panel of three.

*Herbert F. Rubenstein, Beeghley, Rubenstein and Moore,* with him, *Arthur Lefkoe, Wisler, Pearlstine, Talone, Craig & Garrity,* for appellant.

*Edmond T. Tiryak,* for appellee.

*Thomas K. Gilhool, Judith Gran* and *Frank J. Laski,* for Amicus Curiae, Pennsylvania Association for Retarded Citizens.

OPINION BY JUDGE CRAIG, May 30, 1985:

Plymouth Township appeals from an order of the Montgomery County Common Pleas Court which reversed a ruling of the Plymouth Township Zoning Hearing Board which had refused zoning approval as to three existing residential, nonprofit community liv-

ing arrangements (CLA)[1] for mentally retarded citizens. The township contends that the three CLA's, each housing three nonrelated, mentally retarded citizens in a supervised, residential home atmosphere designed to assist these persons to adjust to mainstream society, are actually mini-institutions and accordingly cannot be considered to be single-family residences because of the township definition of "family."

Appellee Philadelphia Center for Developmental Services (Center) is a nonprofit corporation which operates the three CLA's questioned here. Each CLA is located in a B Residential District, where the only residential use allowed is a single-family detached dwelling. Two full-time day and one overnight staff member assist the residents with cooking and housekeeping chores. The residents perform other daily living tasks and attend workshops during the day to help them develop the skills needed to function independently. Center supervisory personnel visit each CLA several times weekly.

Before the township challenged the arrangement, the Center had operated CLA's in Plymouth Township for several years. In fall 1982, the township governing body required that all CLA's located in the township apply for a special exception under the zoning ordinance in order to continue operation.

The Center filed applications for special exceptions, under protest, and argued that its CLA's already complied with the township zoning ordinance and therefore did not need special exception approval.

---

[1] "A CLA is a program developed by the Commonwealth of Pennsylvania through the Department of Public Welfare. The purpose of the program is to place persons disabled by mental retardation into a family setting as nearly normal as possible and into the mainstream of society." *Hopkins v. The Zoning Hearing Board of Abington Township, Inc.*, 55 Pa. Commonwealth Ct. 365, 366, 423 A.2d 1082, 1083 (1980).

The board conducted public hearings on the applications and denied the Center's petition. In its opinion and order, the board concluded that the CLA's did not comply with the zoning ordinance definition of "family" and, therefore, could not operate in a single-family zoned district. The board also concluded that the Center had not established that, in the alternative, its CLA's complied with section 400.C.2 of the zoning ordinance which permits the operation of sanitariums, convalescent homes and hospitals as special exceptions in residential districts. Upon appeal to the common pleas court, Judge BRODY, with a comprehensive opinion, reversed.

Our scope of review, where the reviewing common pleas court has taken no additional evidence, is limited to determining whether or not the zoning board abused its discretion or committed an error of law. *Children's Aid Society v. Zoning Board of Adjustment,* 44 Pa. Commonwealth Ct. 123, 402 A.2d 1162 (1979). Because we conclude that the board has incorrectly interpreted its zoning ordinance, we must affirm Judge BRODY's sound decision.

The Plymouth Township Zoning Ordinance permits single-family dwellings in its residentially zoned districts. Section 200 of the ordinance defines "family" as

> [a]ny number of individuals living together as a single, nonprofit housekeeping unit and doing their cooking on the premises, when said individuals are related by blood, marriage or adoption, including any number of foster children under the care of same; *or no more than five (5) unrelated individuals living together as a single, nonprofit housekeeping unit and doing their cooking on the premises.* (Emphasis added.)

Section 200 of the Plymouth Township Code, Appendix B—Zoning. The township questions "whether the use of the subject properties as a residence for three mentally retarded individuals in a Community Living Arrangement program operated by appellees with a large staff, specialists and therapists and without live-in houseparents is a single housekeeping unit constituting a 'Family' under a single family dwelling ordinance provision in a residential district."

There is nothing in the ordinance definition which bars the three CLA.'s here, because each CLA houses only three nonrelated residents who live together "as a single, nonprofit housekeeping unit" and who do their cooking on the premises.[2] The township provides no factual support for its contention that CLA residents "do not live together as a single housekeeping unit."

The township raises a question as to the number of people actually present on the premises at any one time by referring to the number of central staff people required to support the residents. However, the relationship of a staff member to the residents of the CLA is similar to that of a non-resident housekeeper, maid, or gardener who performs services for the occupants of a home; the similarity remains whether the staff provides twenty-four-hour supervision or has one of the staff members remain overnight on a rotating basis.

The township asserts that "the relationship between the CLA residents and the Center's non-resident employees is not the functional equivalent of a biologically related family, but more like an institu-

---

[2] The township also alleges, briefly, that the CLA residents are at best transient and that, therefore, they cannot be "residents." However, the township does not pursue this point and we shall not do so.

tional use." The township also cites a number of cases in its attempt to show that these arrangements are not the functional equivalent of families; Judge BRODY's opinion effectively has distinguished them. Where, as here, the zoning ordinance provides an operative definition of what constitutes a "family" without requiring blood or marital relationship, that definition controls.

Because we find that the CLA's fit within the definition of "family," as defined in the ordinance and require no special exception approval to operate, we do not reach the issue of whether the Center, in a challenge to the constitutionality of the ordinance, complied with section 1004 of the Pennsylvania Municipalities Planning Code.[3]

Therefore, we affirm Judge BRODY's order.

ORDER

Now, May 30, 1985, the order of the Court of Common Pleas of Montgomery County, dated October 13, 1983, is affirmed.

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §11004.