551 A.2d 1134

Appeal of Hortense Summers From Decision of The Springfield Township Zoning Hearing Board. Hortense Summers, Appellant.

Argued June 15, 1988, before Judge SMITH, and Senior Judges KALISH and NARICK, sitting as a panel of three.

*John A. Rule, Miller, Turetsky & Rule,* for appellant.

*Thomas F. Oeste,* with him, *Thomas M. Garrity* and *Michael J. O'Donoghue, Wisler, Pearlstine, Talone, Craig & Garrity,* for appellee.

OPINION BY JUDGE SMITH, December 13, 1988:

This matter arises from cross-appeals taken by Hortense Summers (Summers) and Springfield Township (Township) from the order of the Court of Common Pleas of Montgomery County which affirmed in part and reversed in part the decision of the Springfield Township Zoning Hearing Board (Board) that Summers' use of her residence for participation in two county mental retardation programs is not permitted in a single-family detached dwelling located in an "AA" Residential Zone. The trial court affirmed the Board's decision concerning Summers' participation in the "Host Family" program ("Respite Care"),[1] but reversed as to Summers' participation in the "Family Living" program.[2] The trial court is affirmed.

Issues presented for review are whether Summers' participation in the subject mental retardation programs is permitted of right as a single-family use under the Township zoning ordinance; and whether the prohibition of Summers' participation in the "Respite Care" program is an unlawful discrimination in violation of the Federal and State Constitutions.

Summers owns a residence located in an area zoned "AA Residential" that she uses, and proposes to use, to house mentally retarded persons referred to her by the "Respite Care" and "Family Living" programs. Two cease and desist orders dated May 6, 1986 and July 2, 1986 were issued by the Township Code Enforcement

---

[1] 55 Pa. Code §6400.251(a) defines "Respite Care" as a "temporary short period of community residential care that provides assistance for the parent or guardian or [sic] the mentally retarded person."

[2] 55 Pa. Code §6400.271 defines "Family Living" as "a community residential mental retardation facility providing food, shelter and personal care to one or two residents in a private home of a family who is not a relative of the residents."

Officer directing Summers not to house boarders from the mental retardation programs. Summers appealed to the Board, which after hearing, upheld both cease and desist orders on the grounds that the temporary placement contemplated by the "Respite Care" program was not permitted in the "AA" Residential Zone; and that the facility-type placement required by the "Family Living" program was an impermissible institutional use in the "AA" Residential Zone. Neither program, according to the Board, was analogous to a Community Living Arrangement placement program (CLA).[3] Summers appealed the Board's decision to the trial court, which affirmed in part and reversed in part, whereupon Summers petitioned this Court for review and the Township cross-appealed.[4]

Summers initially contends that her participation in the "Respite Care" program is consistent with uses permitted as of right in the Township's "AA" Residential Zone; and that the daily routine of the subject premises is indistinguishable from that of a natural family having mentally retarded family members. The Township, on the other hand, argues that Summers' use of her residence in accordance with the "Respite Care" program is not a permissible single-family use within the meaning of the Township zoning ordinance.

---

[3] This state program mainstreams mentally retarded persons into society by placing them into family settings. *Philadelphia Center for Developmental Services, Inc. v. Zoning Hearing Board of Plymouth Township,* 89 Pa. Commonwealth Ct. 591, 593 n.1, 492 A.2d 1191, 1192 n.1 (1985).

[4] This Court's scope of review where, as here, the trial court took no additional evidence, is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion. *Miller Appeal,* 511 Pa. 631, 515 A.2d 904 (1986); *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

Permitted uses in the Township "AA" Residential Zone include single-family detached dwellings such as Summers' residence. Section 114-41 of the Township zoning ordinance. "Family" is defined in Section 114-21 of the Township zoning ordinance as:

> Any number of individuals living together as a single, nonprofit housekeeping unit and doing their cooking on the premises, when said individuals are related by blood, marriage or adoption, including any number of foster children under the care of the same; or not more than four (4) unrelated individuals living together as a single, nonprofit housekeeping unit and doing their cooking on the premises.

The trial court determined that the "Respite Care" program contemplated temporary institutional placement of mentally retarded persons, and as such, did not fall within the meaning of the term "family". Summers argues that the trial court erred inasmuch as the definition of "family" contained in the Township zoning ordinance does not specify that any time requirements be met in order to be considered a "family".

Whether Summers' participation in the "Respite Care" program is a permissible use in the Township's "AA" Residential Zone depends upon whether it is a "single, nonprofit housekeeping unit" pursuant to the Township zoning ordinance's definition of "family". "Single housekeeping units" are units that function in the manner of family residences. *See Miller Appeal*, 511 Pa. 631, 515 A.2d 904 (1986). This term excludes living arrangements primarily established for profit as well as for therapeutic or corrective purposes as these uses are incompatible with traditional familial settings. *Id.*

In *Miller*, appellant used her home, which was located in a residentially zoned area, to house physically

handicapped and mentally retarded boarders of various ages. The Pennsylvania Supreme Court found that appellant's household fit within the definition of a "single housekeeping unit" since appellant offered substantial evidence to establish a caring familial unit. Factors deemed significant by the Supreme Court included, *inter alia,* evidence that the individuals lived, cooked, and took meals together as a single housekeeping unit; activities of the home were shared in by all occupants; social as well as religious functions were attended as a group; and holidays were jointly celebrated. Although this arrangement was found not to be a transient establishment, the Supreme Court stated that the quality of the relationship during the residency period, and not its duration, was a controlling factor. Nor was the fact that appellant received monthly subsidies from some of the residents determinative of whether the living arrangement constituted a family unit since the income received did not suggest a profit motive in view of the special care required by the residents.

Unlike *Miller,* the "Respite Care" program is designed to temporarily place mentally retarded persons into a "host" home to provide some relief to the natural family. Findings of Fact No. 4; N.T., pp. 18, 27, 37-38. Although Summers testified that she engaged in religious and recreational activities with the mentally retarded persons temporarily placed in her charge, there is no obligation for a "host" family to do so. N.T., pp. 47, 85. The "Respite Care" program is thus not only therapeutic in nature, but also resembles a service of convenience similar to baby-sitting or day-care. The placements thereunder are not designed to integrate mentally retarded individuals as members of surrogate families, but merely to provide them with adequate and safe family-like environs while they are temporarily

away from their natural families. N.T., p. 44.[5] Accordingly, it was not error for the Board to find, and the trial court to affirm in part, that Summers' participation in the "Respite Care" program was incompatible with the meaning of "family" contained in the Township's zoning ordinance.[6]

Summers alternatively argues that prohibiting her participation in the "Respite Care" program while permitting foster care of children constitutes discriminatory application and enforcement of the Township's zoning ordinance under Article I, §26, of the Constitution of the Commonwealth of Pennsylvania and the Equal Protection Clause of the United States Constitution. Summers contends that the "Respite Care" program is structured around a foster care model. The trial court concluded, however, that "Respite Care" program residents are not the equivalent of foster care children since the "Respite Care" program envisions temporary care rendered in a non-family fashion. The purpose of the "family" definition contained in the Township's zoning ordinance is clearly to preserve the residential character of the subject area in order to promote family values. *See Hopkins v. Zoning Hearing Board of Abington Township,* 55 Pa. Commonwealth Ct. 365, 423 A.2d

---

[5] The "Respite Care" program is not analogous to a CLA as suggested by Summers since CLAs encompass substantially different objectives and functions. *See* n.3. Nor does the "Respite Care" program resemble the foster children programs where minor children are placed into surrogate families out of necessity for their safety and with the hope of providing some familial stability. *See Children's Home of Easton v. City of Easton,* 53 Pa. Commonwealth Ct. 216, 417 A.2d 830 (1980).

[6] This Court may affirm trial court action for any valid reason appearing of record although such reason was not relied upon or adjudicated by the trial court as support for its determination. *Friedlander v. Zoning Hearing Board of Sayre Borough,* 119 Pa. Commonwealth Ct. 164, 546 A.2d 755 (1988).

1082 (1980). However, unlike the foster home in *Hopkins,* the "Respite Care" program operates from a mixed "therapeutic/service of convenience" base that is inconsistent with the traditional familial setting, and therefore, is not the functional equivalent of a biologically-related family. A sufficient relationship thus exists between the restrictive definition of "family" in the Township's zoning ordinance and the state interest in preserving the residential character of the instant neighborhood. Accordingly, this Court must find the challenged zoning ordinance provision constitutional as applied to Summers' participation in the "Respite Care" program. *See* and *contrast Hopkins* and *Chidren's Home of Easton v. City of Easton,* 53 Pa. Commonwealth Ct. 216, 417 A.2d 830 (1980). Nor does the challenged zoning ordinance provision offend the Equal Protection Clause of the United States Constitution since "host" families under the "Respite Care" program are not similarly situated to surrogate families participating in foster care programs. *See* and *contrast City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed. 2d 313 (1985). The trial court was correct in affirming the Board relative to Summers' participation in the "Respite Care" program.

The Township, contrary to the trial court's determination, asserts that Summers' participation in the "Family Living" program also contravenes the single-family use permitted in the Township's "AA" Residential Zone since such a living arrangement fails to constitute a family unit. The trial court found that the "Family Living" program is a CLA intending permanent placement of mentally retarded persons into private homes and, as such, is a use permitted in an "AA" Residential Zone. The Board, however, ruled that the facility-type placement required by the "Family Living" program is an impermissible institutional use in the

Township's "AA" Residential Zone and is not analogous to a CLA which contemplates permanent placement of mentally retarded individuals in a home to be assisted by staff persons.

Although the family living program host residence is described as a "community residential mental retardation facility," the term "facility" is defined as a "private home of a family who is not a relative of the residents". 55 Pa. Code §6400.271. Moreover, the "Family Living" program places mentally retarded persons into private homes with the intent that such persons will become members of their surrogate families and remain as long as the placement is appropriate, and possibly, a lifetime. N.T., pp. 30, 52-53. Testimony also demonstrates that the "Family Living" program is a CLA where the residents are expected to assist with normal household chores, when capable; participate in recreational activities as a family; and attend religious observances, school, and work, where appropriate. N.T., pp. 21-22, 30-31, 52-54. The "Family Living" program thus contemplates the type of living arrangement which has been held to constitute a "family" pursuant to a single-family dwelling ordinance provision in a residential district. *Philadelphia Center for Developmental Services, Inc. v. Zoning Hearing Board of Plymouth Township*, 89 Pa. Commonwealth Ct. 591, 492 A.2d 1191 (1985).[7] In *Philadelphia Center for Developmental Services, Inc.,* this Court addressed the issue of whether a CLA, located in a residential district, is a single housekeeping unit constituting a "family" under a single-family dwelling ordinance provision. The ordinance's definition of "fam-

---

[7] *See also Allegheny Valley School v. Zoning Hearing Board of Slippery Rock Borough*, 102 Pa. Commowealth Ct. 290, 517 A.2d 1385 (1986) (although the living arrangement here was described as a "group home", group homes are a type of CLA. N.T., pp. 21, 31); *Hopkins.*

ily" therein differs from the instant definition only as to the number of unrelated persons who could live together as a family unit, allowing five, as opposed to four, unrelated persons. This Court found nothing in the ordinance definition to preclude the operation of CLAs located in residentially zoned areas provided that they otherwise satisfy the ordinance's restrictions.[8] The Board thus erred as a matter of law in concluding that Summers' participation in the "Family Living" program entailed an impermissible institutional use of her residence. The trial court therefore properly reversed this portion of the Board's decision.

Accordingly, the trial court's decision is affirmed in all respects.

## ORDER

AND NOW, this 13th day of December, 1988, the decision of the Court of Common Pleas of Montgomery County is affirmed.

Judge MACPHAIL did not participate in the decision in this case.

---

[8] Testimony sufficiently indicates that Summers is not permitted to accept any more than two placements at any given time. N.T., pp. 42, 54-55, 61, 75, 78.