554 A.2d 155

In Re: Appeal of Lynch Community Homes, Inc. From The Decision of The Zoning Hearing Board of Upper Moreland Township. Lynch Community Homes, Inc., Appellant.

Argued June 15, 1988, before Judge SMITH, and Senior Judges KALISH and NARICK, sitting as a panel of three.

*Elias S. Cohen,* for appellant.

*George B. Ditter, Jenkins, Tarquini & Jenkins,* for appellee, Upper Moreland Township.

*Jon Pushinsky,* with him, *Michael L. Rosenfield, Pushinsky & Rosenfield,* for Amicus Curiae, Association for Retarded Citizens, Allegheny County Chapter.

*Howard Ulan,* Assistant Counsel for Amicus Curiae, Department of Public Welfare.

OPINION BY JUDGE SMITH, February 1, 1989:

Lynch Community Homes, Inc. (Appellant) appeals from the order of the Court of Common Pleas of Montgomery County which sustained the decision of the Upper Moreland Township Zoning Hearing Board (Board) denying Appellant's application for a special exception[1] to operate a home for retarded persons in Upper Moreland Township's (Township) R-3 Residential District. Issues presented for review are whether the proposed use of Appellant's property is a permitted use under the Township zoning ordinance's (Ordinance) def-

---

[1] Special exceptions are not "exceptions" to zoning ordinances. They are permitted uses to which an applicant is entitled unless a zoning hearing board determines that the use would adversely affect the community. *Johnson v. North Strabane Township,* 119 Pa. Commonwealth Ct. 260, 261 n.1, 546 A.2d 1334, 1334 n.1 (1988).

inition of "family";[2] whether the ordinance's definition of "family" is unconstitutional as applied to Appellant's proposed use of the subject property; whether the ordinance's definition of "family" frustrates a legitimate state objective to provide appropriate care for mentally retarded persons; whether Appellant is entitled to a special exception under *Children's Aid Society v. Zoning Board of Adjustment*, 44 Pa. Commonwealth Ct. 123, 402 A.2d 1162 (1979); and whether the requirement that group homes be 2500 feet apart lacks a rational basis. The decision of the trial court is affirmed.

Appellant filed an application with the Board seeking a special exception under the Ordinance's "group home" exception provisions to use the subject property, a leased single-family residence, as a home for three unrelated mentally retarded persons and one houseparent. The Board, after hearing, found that Appellant's proposed operation constituted a "group home" under the Ordinance, and accordingly, required a special exception to locate within the R-3 Residential District.[3] The Board further found that the subject property was located only

---

[2] The Ordinance defines "family" in pertinent part as: "[a]ny number of individuals living and cooking together as a single housekeeping unit, provided that not more than two (2) of such number are unrelated to all of the others by blood, marriage or legal adoption. ..." The Ordinance further provides under the definition of "family" that:

> As a special exception, the Zoning Hearing Board may interpret the term 'family' to apply to a group of individuals, not exceeding four (4), not related to each other by blood, marriage or legal adoption, living and cooking together as a single housekeeping unit. ... Section 1.03(22) of the Ordinance.

[3] A "group home" is defined under the Ordinance as:

> An establishment that provides a home, including room and board, to persons who are residents by virtue of receiving supervised specialized services limited to health, social and/or rehabilitative services that are provided by a govern-

1700 feet from another group home operated by Appellant in contravention of the 2500-foot distance requirement attached to the special exception governing group homes and thus denied Appellant's request for a special exception. Appellant appealed to the trial court which, without taking additional evidence, also found Appellant's proposed operation to be a group home subject to the Ordinance's special exception criteria. The trial court, like the Board, concluded that Appellant failed to satisfy the 2500-foot distance requirement, and accordingly, sustained the Board's denial of a special exception. The trial court further upheld the constitutionality of the Ordinance as applied to Appellant's proposed operation. Hence, this appeal.[4]

Appellant initially challenges the necessity to obtain a special exception for its proposed use. Appellant argues that its operation is a Community Living Arrangement (CLA),[5] not a group home, and as such, should not be

_____

mental agency, their licensed or certified agents, or a responsible non-profit social service corporation. These services shall be provided in a family environment and only to persons who are physically or mentally handicapped or who are in need of supervision and specialized services. ... Section 1.03(55) of the ordinance.

Group homes are permitted uses by special exception if certain criteria are met, including, *inter alia*, that a minimum of 2500 feet separates them. Section 3.08 of the Ordinance.

[4] This Court's scope of review, where, as here, the trial court took no additional evidence, is limited to determining whether the Board committed an error of law or abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983); *Summers Appeal*, 122 Pa. Commonwealth Ct. 42, 45 n.4, 551 A.2d 1134, 1135 n.4 (1988).

[5] This state program mainstreams mentally retarded persons into society by placing them into family settings. *Summers Appeal*, 122 Pa. Commonwealth Ct. 42, 45 n.3, 551 A.2d 1134, 1135 n.3 (1988); *Philadelphia Center for Developmental Services, Inc. v. Zoning*

subject to any further requirements than those imposed upon biological families under the Ordinance since CLAs have been held to be the functional equivalents of biological families. Appellant relies upon *Miller Appeal,* 511 Pa. 631, 515 A.2d 904 (1986); *Philadelphia Center for Developmental Services, Inc. v. Zoning Hearing Board of Plymouth Township,* 89 Pa. Commonwealth Ct. 591, 492 A.2d 1191 (1985); *Hopkins v. Zoning Hearing Board of Abington Township,* 55 Pa. Commonwealth Ct. 365, 423 A.2d 1082 (1980); *Children's Home of Easton v. City of Easton,* 53 Pa. Commonwealth Ct. 216, 417 A.2d 830 (1980); and *Children's Aid Society.* These cases, however, are factually inapposite and not controlling here.

One significant distinction between the instant case and the cases relied upon by Appellant is that Appellant requested a special exception under the Ordinance's "group home" exception provisions. *See* Certified Record; Appellant's Notice of Appeal to the trial court, Paragraph 4. It would therefore appear that Appellant erred, and not the Board, in failing to request a special exception under the Ordinance's "family" provisions. Moreover, substantial evidence of record supports the Board's finding that Appellant's proposed operation fits squarely within the Ordinance's definition of "group home". *See* Findings of Fact.

Other distinctions exist as well. In *Miller, Philadelphia Center for Developmental Services, Inc.* and *Children's Home of Easton, e.g.,* the uses in question fit within the ordinances' definitions of "family" which did not specify any need to obtain a special exception or the like. Here, the Ordinance's definition of "family" clearly excludes Appellant's proposed use absent grant of a spe-

---

*Hearing Board of Plymouth Township,* 89 Pa. Commonwealth Ct. 591, 593 n.1, 492 A.2d 1191, 1192 n.1 (1985).

cial exception. Moreover, the Supreme Court in *Miller* concluded that the use therein was a lawful, nonconforming use and intimated that a different outcome may have resulted under a more specific ordinance, such as here.

Likewise, this Court's decision in *Hopkins* was reached in the context of a factual matrix unlike that present here. This Court's analysis in *Hopkins* focused primarily upon whether or not the ordinance's definition of "family" as applied to that CLA was constitutional. The ordinance was found to be unconstitutional since no rational relationship existed between its restrictive definition of "family" and the state interest to preserve the residential character of the neighborhood. The instant case, however, entails recognition of the Ordinance's definitions of "family" and "group home" as well as a different interest advanced by the Township which will be addressed *seriatim*.

Similarly, this Court's decision in *Children's Aid Society* fails to provide persuasive support for Appellant's position. The Society, as here, was required to seek a use certificate in the nature of a special exception. This Court found that the Society sufficiently satisfied the conditions attached to the use certificate. *Children's Aid Society* therefore weakens, rather than supports, Appellant's position in that requiring a use certificate was not found to be an unjustified burden imposed upon the Society but not upon biological families.

Whether zoning ordinances may or may not subject CLAs or similar operations to additional requirements not imposed upon biological families, even when such operations can be viewed as functional equivalents of biological families, must be determined on a case-by-case basis with consideration given to the ordinance and municipal interests in question. *Miller; Hopkins; Children's Aid Society*. Accordingly, this Court declines to extend the analysis employed in the cases relied upon by Appel-

lant to the facts presented here absent a finding that no rational relationship exists between the Ordinance's restrictive definition of "family" and the interests advanced by the Township.

Appellant contends, however, that the Ordinance's definition of "family" bears no rational relationship to the legitimate purposes which single-family residential zoning may serve. Challengers of zoning ordinances bear heavy burdens since zoning ordinances are presumed to be constitutional. Appellant must therefore establish that the Ordinance's definition of "family" is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. Should the validity of the Ordinance be "fairly debatable", the Ordinance must be upheld. See *Glorioso Appeal,* 413 Pa. 194, 196 A.2d 668 (1964); *Owens v. Zoning Hearing Board of the Borough of Norristown,* 79 Pa. Commonwealth Ct. 229, 468 A.2d 1195 (1983).

To promote and protect the health, safety, morals and general welfare of the Township's citizens by securing safety from dangers and to provide for the orderly growth of the Township are among the Ordinance's purposes. Section 1.01 of the Ordinance; *see also* Section 604 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10604. The Board found, *inter alia,* that the subject premises is located on a heavily travelled road which has no sidewalks for use by Appellant's mentally retarded residents. Findings of Fact No. 21. Moreover, testimony also demonstrated the desirability and reasonableness in preventing oversaturation of any area within the Township by operations such as that of Appellant. N.T., pp. 31-32.[6] The

---

[6] This witness also testified that she would not regard one facility within three blocks of another to constitute oversaturation of the area. N.T., p. 33. What serves the public interest, however, is primarily

Ordinance's definition of "family" thus serves valid purposes and is not clearly arbitrary and unreasonable.

Appellant next argues that the Ordinance frustrates a legitimate state objective in providing appropriate care for mentally retarded citizens, citing *Children's Aid Society* where this Court found that a foster home was in harmony with the purpose of the zoning ordinance. No evidence of record suggests that the Ordinance has served to frustrate appropriate care for the Township's mentally retarded citizens. To the contrary, Appellant has been granted permission on three previous occasions to operate similar homes within the Township. Findings of Fact No. 9; N.T., p. 11. Appellant alternatively argues that it is entitled to a special exception under *Children's Aid Society*. The Society, however, unlike Appellant, satisfied the conditions attached to the requested use certificate. Moreover, Appellant's argument that the 2500-foot distance requirement lacks a rational basis is not persuasive. The rational basis here is to prevent oversaturation as previously discussed.[7]

Finding no error of law nor abuse of discretion by the Board, the decision of the trial court is affirmed.

### ORDER

AND NOW, this 1st day of February, 1989, the decision of the Court of Common Pleas of Montgomery County is affirmed.

Judge MACPHAIL did not participate in the decision in this case.

--------

an issue for the legislative body. *See Mobil Oil Co. Appeal*, 21 Pa. Commonwealth Ct. 295, 345 A.2d 313 (1975).

[7] *See Mobil Oil Co. Appeal*, 21 Pa. Commonwealth Ct. 295, 345 A.2d 313 (1975) where this Court upheld a spacing requirement as a special exception criteria. *Also see Jehovah's Witnesses Appeal*, 183 Pa. Superior Ct. 219, 130 A.2d 240 (1957), *appeal dismissed*, 355 U.S. 40 (1957).