ACT I, INC. and Richard E. Keenhold,
Jr., Appellants,

v.

ZONING HEARING BOARD OF BUSH-
KILL TOWNSHIP and Chris Miller
and Charlotte Miller.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1997.
Decided Dec. 24, 1997.

John Molnar, Wind Gap, for appellants.

Edmund G. Hauff, Allentown, for appellee.

Before COLINS, President Judge, LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Act I, Inc. and Richard E. Keenhold, Jr. (Keenhold) appeal from an order of the Court of Common Pleas of Northampton County which affirmed the decision of the Bushkill Township Zoning Hearing Board (Board) denying their request for permission to operate a group home for fourteen dependent female youths.

Keenhold is the owner of the subject property containing a three-story building, which was previously used as a restaurant/bar and two apartments. Act I, Inc. is a non-profit corporation licensed by the Department of Public Welfare to operate group homes for youths.

In January 1996, Keenhold and Act I, Inc. (collectively, Act I, Inc.), filed a zoning/building application seeking permission to make alterations to the interior of the building and operate "a group home." Section 902.AA of the Ordinance permits a group home by right in a lawful dwelling unit located in the NC–Neighborhood Commercial zoning district,

where the property is located, if various specific requirements are met. The zoning officer denied the application on the basis that the proposal failed to meet the requirements of the Ordinance. Act I, Inc. appealed the denial to the Board and, in the alternative, requested a variance from the requirements of the Ordinance. Act I, Inc. also challenged the validity of the provisions of the Ordinance applicable to group homes.

At the hearing before the Board, Act I, Inc. proposed to lease the basement and first floor of the subject property previously used as a restaurant/bar and operate a group home for fourteen female youths (children), whose ages will range from twelve to seventeen. The children will be referred to Act I, Inc. by the County Children and Youth Division after being adjudicated to be "dependent" by the juvenile court. The dependent children are individuals who have been abused at their home and can no longer function within their own household. They are not emotionally disturbed and do not present a threat to themselves or others.

The objective of the proposed group home is to stabilize the children's behavior in a normal living environment and eventually return them to their home and family. The proposed facility will have a common eating area, separate bedrooms and common recreational area. Employees of Act I, Inc, who meet the guideline of the Department of Public Welfare, will supervise the children on three shifts and act as "surrogate" parents. No treatment will be provided to the children at the facility. Some children will attend a private school operated by Act I, Inc., and the remainder will attend schools in the Nazareth Area School District. The average length of the children's stay at the facility will be eight to nine months.

■ The Board concluded that the proposed use does not fall within the definition of a "group home"; Act I, Inc. failed to comply with the requirement for on-lot septic system set forth in Section 1903.W.9 of the Ordinance; the proposed use is not a "use of the same general character as those permitted by right and condition in the NC District" and therefore is not permitted by a

special exception under Section 904.A of the Ordinance; and, Act I, Inc. failed to establish unnecessary hardship required for granting a variance. The Board accordingly refused to grant Act I, Inc. a special exception or a variance. On appeal, the trial court affirmed the Board's decision. The court also rejected the challenge to the validity of the provisions of the Ordinance related to group homes.[1]

■ Act I, Inc. first contends that the proposed use meets the specific criteria for a group home permitted by right in the NC zoning district.

Section 201 of the Ordinance defines a "group home" as follows:

The use of any lawful dwelling unit which meets *all* of the following criteria:

1. involves the care of the maximum number of persons permitted by the 'group home' standards of Section 2002,[2] and meets all other standard of such section,

2. involves persons functioning as a common household,

3. involves providing non-routine support services and oversight to persons who need such assistance to avoid being placed within an institution, *because of physical disability, old age, mental retardation or other 'handicap' as defined by applicable Federal law,*

4. does not meet the definition of 'treatment center' or a 'dormitory' and

5. does not involve the housing or treatment of persons who could reasonably be considered a threat to the physical safety of others. (Emphasis added.)

In addition, a group home must be in "a dwelling unit," which is defined as "[o]ne dwelling occupied by one 'family.'" Section 201 of the Ordinance. The term "family" is defined as:

One or more persons living in a single dwelling unit and functioning as a common household unit. *A family shall not in-*

*clude more than 4 persons who are not related to each other by blood, official foster relationship, marriage or adoption. The term 'family' may specifically include a maximum of 4 unrelated persons living within a permitted 'group home' ...,* except that the provisions for groups [sic] homes in Article 19 may allow a greater number of unrelated persons in certain circumstances.

*Id.* The parties agree that under Section 1903.W.8.c of the Ordinance, the maximum number of residents permitted in a group home, based on the lot area and the building setback applicable to this matter, is four.

Thus, to establish that the proposed use is permitted by right in the NC zoning district, Act I, Inc. must show, *inter alia,* that it intends to house "handicapped" individuals at the proposed facility.

The Ordinance, in defining a group home, incorporates Section 3602(h) of the Fair Housing Act, 42 U.S.C. § 3602(h), which defines the term "handicap" as:

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

(2) a record of having such an impairment, or

(3) being regarded as having such an impairment. . . .

At the hearing, the executive director of Act I, Inc. testified that the children at the facility will be victims of the various abuses and taken out of their homes; they are neither physically or mentally handicapped nor socially or emotionally disturbed; Act I, Inc. is not licensed to provide services to emotionally disturbed children; and, it will not provide any prescribed medication or counseling to the children at the facility. Because the proposed use admittedly does not involve any "handicapped" children, the proposed facility

---

1. This Court's scope of review in zoning cases, where, as here, the trial court did not take any additional evidence, is limited to determining whether the Board committed an error of law or manifest abuse of discretion. *Teazers, Inc. v. Zoning Board of Adjustment of City of Philadelphia,* 682 A.2d 856 (Pa.Cmwlth.1996).

2. The parties agree that the Ordinance does not contain Section 2002 and that the correct section applicable to group homes is Section 1903.W.

cannot be considered a group home permitted by right in the NC zoning district.[3]

██ Act I, Inc. contends, in the alternative, that the proposed use should be permitted by a special exception as a use of the same general character as a group home, pursuant to Section 904.A.

The facts in this matter are similar to those presented in *Lakeside Youth Service v. Zoning Hearing Board of Upper Moreland Township*, 51 Pa.Cmwlth. 485, 414 A.2d 1115 (1980), involving the ordinance which permitted by a special exception up to four unrelated individuals to reside in a single family dwelling as a use of the same general character as a single family dwelling use. In *Lakeside*, the non-profit corporation proposed, as in this matter, to operate homes for six delinquent young female youths and provide houseparents and case workers. Under the proposal, the average stay of the residents was to be six months to one year. This Court held that such living arrangement could not be considered a use of the same general character as a single family dwelling use because the arrangement was of transient nature and simply far removed from the concept of a single family dwelling.

In this matter, the executive director of Act I, Inc. testified that the general type of care in the facility would be "basically . . . be room and board type of care," and that the average length of the children's stay at the proposed facility would be only eight to nine months. N.T., p. 40. As in *Lakeside*, the living arrangement proposed in this matter is so transient that it cannot be considered as having the same general character of a single dwelling use of a group home permitted in the NC zoning district.[4]

Moreover, contrary to the argument of Act I, Inc., the living arrangement is not similar to a foster relationship included in the definition of a family. In *Wengert v. Zoning Hearing Board of Upper Merion Township*, 51 Pa.Cmwlth. 79, 414 A.2d 148 (1980), this Court rejected the similar argument and held that the proposed home for six troubled adolescents referred by the courts with houseparents and residential staff did not constitute a permitted single family dwelling because such home was "not the normal foster home where a family accepts juveniles into a family surrounding as a substitute family home." *Id.* at 149. *See also Pennsylvania George Junior Republic v. Zoning Hearing Board of Coolspring Township*, 37 Pa. Cmwlth. 151, 389 A.2d 261 (1978), in which this Court held that the similar living arrangement constituted an institutional home, not a permitted single family dwelling.

Further, to be entitled to a special exception, an applicant must bring the proposal within the specific requirements in the zoning ordinance. *Bray v. Zoning Board of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980). In this matter, the proposal to house fourteen children failed to comply with, *inter alia*, Section 1903.W.8.c, which limits the maximum number of unrelated persons permitted in a group home to four. Hence, the Board properly concluded that the proposed use is not permitted by a special exception under Section 904.A of the Ordinance.

██ Since the proposed use is not permitted by right or by a special exception, Act I, Inc. was required to obtain a variance from the requirements of the Ordinance for a group home. To establish entitlement to a

---

3. Because Act I, Inc. failed to establish that the proposed use is a use permitted by right, it is unnecessary to address whether the use complies with all other requirements, including the on-lot septic requirement.

4. Act I, Inc. relies on *Appeal of Miller*, 511 Pa. 631, 515 A.2d 904 (1986), in which the Supreme Court held that the living arrangement for the aged, physically handicapped or mentally retarded persons constituted a "family," which was defined as "any number of persons living and cooking together as a single housekeeping unit." Unlike *Miller*, however, the Ordinance in this matter specifically permits physically or mentally

handicapped persons in a group home. Similarly, *Eichlin v. Zoning Hearing Board of New Hope Borough*, 671 A.2d 1173 (Pa.Cmwlth.1996), a case relied on by Act I, Inc., in which this Court held that the proposed group home for individuals infected with the HIV virus was permitted as "the functional equivalent of a traditional family," is not controlling in this matter. Unlike *Eichlin*, the definition of a group home in this matter requires not only that the unrelated persons must function as a common household unit, but also that the use must involve handicapped persons.

variance, an applicant must prove, *inter alia*, that it will suffer unnecessary hardship because of unique physical condition peculiar to the property and that the property has no value or only a distress value for any purpose permitted under the ordinance. *Appeal of Lester M. Prange, Inc.*, 166 Pa.Cmwlth. 626, 647 A.2d 279 (1994). It is undisputed in this matter that the property was previously used as a restaurant/bar and apartments, and Act I. Inc. failed to present any evidence that the property cannot be reasonably used for purposes permitted by the Ordinance. Therefore, the Board properly concluded that Act I, Inc. failed to establish unnecessary hardship required for granting a variance.

Finally, Act I, Inc. contends that the provisions of the Ordinance setting forth different standards for related and unrelated persons permitted in a single dwelling unit are unconstitutional and violate the Fair Housing Act prohibiting discriminatory housing practice based on "familial status."[5] To support its contention, Act I, Inc. relies on *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995).[6]

In *Oxford House*, the zoning ordinance, in defining "family," limited the number of unrelated persons permitted in a single family dwelling to five or less. The City issued a citation to Oxford House for operating a group home for ten to twelve individuals recovering from alcoholism and drug addiction in violation of the ordinance. The parties stipulated that the residents in the group home were handicapped persons protected by the Fair Housing Act. The only issue presented in *Oxford House* was whether Section 3607(b)(1) of the Fair Housing Act, 42 U.S.C. § 3607(b)(1), which exempts "any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling," is applicable to the family composition rule set forth in the ordinance. The Court held that Section 3607(b)(1) only exempts capping of the total number of occupancy in a dwelling designed to prevent overcrowding, rather than to preserve the family character of a neighborhood. The Court further held that the Act only requires that "reasonable" accommodations be afforded to individuals protected by the Act.

Thus, under *Oxford House*, the ordinance setting forth different limitations on the maximum number of related and unrelated persons permitted in a dwelling is not exempted by Section 3607(b)(1) of the Act. However, the Act requires only that reasonable accommodations be made to the unrelated persons protected by the Act.

In this matter, the Ordinance permits up to seven unrelated persons in a dwelling unit, depending a lot size and a minimum setback of a property. Assuming, *arguendo*, that the children at the proposed facility fall within the definition of "familial status" under Section 3602(k) of the Fair Housing Act, the accommodations afforded to unrelated persons by the Ordinance is not unreasonable.

In *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), the ordinance permitted one or more persons related by blood, adoption or marriage and no more than two unrelated persons living and cooking together in a single family dwell-

---

**5.** Section 3602(k) of the Fair Housing Act, 42 U.S.C. § 3602(k), defines "familial status" as follows:

(k) 'Familial status' means one or more individuals (who have not attained the age of 18 years) being domiciled with—

(1) a parent or another person having legal custody of such individual or individuals; or

(2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

The protection afforded discrimination on the basis of familial status shall not apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

The definition of "familial status" under Section 3602(k) has been construed to include children living with licensed foster parents under the foster care program administered by the state agency having legal custody of the children. *See Gorski v. Troy*, 929 F.2d 1183 (7th Cir.1991).—

**6.** A zoning ordinance is presumed valid; therefore, a party challenging the validity of the zoning ordinance has a heavy burden of establishing that the ordinance is invalid. *St. Margaret Memorial Hospital v. Borough Council of Borough of Aspinwall*, 163 Pa.Cmwlth. 595, 641 A.2d 1270 (1994).

ing. The owners who leased their house to six unrelated college students contended that the ordinance was unconstitutional as violative of equal protection and the rights of association, travel and privacy. The United States Supreme Court held that the ordinance constituted "economic and social legislation," not involving any fundamental rights guaranteed by the Constitution, and that the ordinance had rational relationship to a permissible state objective. The Court stated:

> It is said, however, that if two unmarried people can constitute a 'family,' there is no reason why three or four may not. But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is legislative, not a judicial, function.
>
> . . . .
>
> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is permissible one.... The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

*Id.* at 8–9 (citations omitted; footnotes omitted). *Cf. Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (the ordinance limiting occupancy of a dwelling unit to only a few categories of related individuals, under which it was a crime for the grandmother to live with her grandson violated the Due Process Clause of the Fourteenth Amendment).

In *Appeal of McGinnis,* 68 Pa.Cmwlth. 57, 448 A.2d 108 (1982), *cert. denied sub nom. McGinnis v. Langhorne Manor Borough,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983), the zoning ordinance, as in this matter, permitted one or more persons related by blood, marriage, or adoption, or a group of not more than five unrelated persons in a single family dwelling. Relying on *Village of Belle Terre,* this Court rejected the contention that the ordinance which limited only the number of unrelated persons in a dwelling was unconstitutional. *See also Appeal of*

*Lynch Community Homes, Inc.,* 123 Pa. Cmwlth. 278, 554 A.2d 155 (1989), *appeal denied,* 523 Pa. 644, 565 A.2d 1168 (1989) (the ordinance permitting a group of unrelated individuals to reside as a single housekeeping unit only by a special exception was held constitutional). Hence, the provisions of the Ordinance related to group homes are constitutional and do not violate the Fair Housing Act.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 24th day of December, 1997, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed.